# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIE COLLIER and COLLIER WELDING, LLC, | ) |
| Plaintiffs, | ) |
| v. | ) Case No.: 2:16-cv-01177-JEO |
| ALABAMA DEPARTMENT OF TRANSPORTATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Willie Collier and Collier Welding, LLC filed a complaint in this court[1] against the Alabama Department of Transportation ("ALDOT") alleging violations of Title VI of the Civil Rights Act of 1964 ("Title VI").[2] (Doc. 1).[3] The court has before it the June 22, 2018 motion for summary judgment filed by ALDOT. (Doc. 59). The motion has been fully briefed (docs. 60, 66, 67), and is

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 34).

[2] The complaint also stated claims against ADLOT for race discrimination in violation of § 1983 and the Fourteenth Amendment. (Doc. 1). The court dismissed these claims on August 8, 2017. (Docs. 39, 40). Additionally, the claims in the complaint against Bell Construction and Associates were dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Docs. 53, 54).

[3] All evidentiary citations refer to the document and page number provided by CM/ECF, the court's electronic document filing system, except for citations to depositions, which refer to the page number provided on the deposition transcript, and affidavits, which refer to the paragraph number in the affidavit.

now ripe for decision. For the reasons set forth below, the motion is due to be denied.

I.   STATEMENT OF FACTS

Plaintiff Willie Collier is an African American and the owner of Collier Welding, LLC. (Doc. 1 ¶ 5; Doc. 61-1 ("Collier Dep.") at 35). Defendant ALDOT is a state agency responsible for the administration of federally funded highway construction contracts in accordance with state and federal law. Eligibility for federal funds requires ALDOT to implement a Disadvantaged Business Enterprise program ("DBE") to promote the hiring of minority businesses in the construction industry. Collier Welding, LLC was certified as a DBE by ALDOT. (*See* Doc. 66-1 at 2).

On March 27, 2015, ALDOT opened bidding for a project for a bridge replacement and approaches on 31st Street North over Interstate 59/20 and on 12th Avenue North over Interstate 59/20 in Birmingham, Alabama. (Doc. 61-2 ("McBrien Aff.") ¶ 5; Doc. 66-1 at 4-5). Construction for the bridge project was set to begin on August 3, 2015. (Doc. 61-4 ("Powe Aff.") ¶ 6). The project was awarded to Bell Construction and Associates on May 13, 2015. (Doc. 6-1 at 4-5).

In August or September 2015, Collier met with Casey Mims from Bell Construction. (Collier Dep. at 83, 104, 109-10). Collier told Mims he wanted to submit a quote to perform welding work on the project. (*Id*. at 109-110). During

2

this meeting, Collier gave Mims his welding certificate, DBE certification, LLC formation papers, and his state and county business licenses. (*Id*. at 82, 84). Mims told Collier he had to verify Collier's eligibility to work on an ALDOT project as a welder. (*Id*. at 83, 103).

ALDOT verified that Collier was qualified to participate in ALDOT's DBE program, but stated that Collier was not certified to work as a welder on any ALDOT projects. (Doc. 61-8 ("Pickett Aff.") ¶ 7; Collier Dep. at 65-66). No one at Bell Construction requested that Collier be tested to gain ALDOT certification. Collier was not hired by Bell Construction to work on the project, resulting in the instant complaint.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleading depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id* at 323. Once the movant has met its initial burden, the non-moving party must go beyond the

3

pleading and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue suitable for trial. *See id.* at 324; *see also* Fed. R. Civ. Pro. 56(e).

Substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences must be resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

### III. DISCUSSION

Plaintiffs contend that ALDOT discriminated against them in violation of the Title VI on the basis of race when "it informed Bell Construction that [Collier] was ineligible to work as a welder on [ALDOT] projects because he lacked the proper welding certification." (Doc. 66 at 1). Section 601 of Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). A plaintiff may only bring claims for

intentional discrimination under Title VI. *Sandoval*, 532 U.S. at 293. Title VI "requires that a person prove that he was denied participation, based on his race, in a federally funded program for which he was otherwise qualified." *Humphrey v. United Parcel Serv.*, 200 F. App'x 950, 952 (11th Cir. 2006) (citing 42 U.S.C. § 2000d).[4]

To establish a prima facie case under Title VI, Collier must show (1) ALDOT received federal funds, (2) Collier was discriminated against, and (3) Collier's race, color, or national origin was the motive behind ALDOT's alleged discriminatory conduct. *See Walton v. Secretary Veterans Admin*, 187 F. Supp. 3d 137, 1331 (N.D. Ala. 2016). It is undisputed that ALDOT receives federal funds. The last two elements are in dispute, however.

Collier argues that ALDOT discriminated against him when it told Bell Construction that he was not qualified to work on the bridge project as a welder. As a result, Collier contends he was not given the opportunity to bid on the project. Collier testified that he was certified as a welder and had, in fact, worked on an ALDOT project in the past with the American Welding Society ("AWS") certification he held. He did this work, however, before his business was certified as a DBE.

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

ALDOT maintains that Collier was not certified in a field of work by ALDOT, as required before working on an ALDOT project.[5] (*See* Powe Aff. ¶ 4; Pickett Aff. ¶¶ 2, 5). According to ALDOT, for a welder, like Collier, to become certified to work on an ALDOT project, the welder must be referred and hired by the contractor awarded the project. (Pickett Aff. ¶ 3). The contractor who hires the DBE must then contact ALDOT's Materials and Test Bureau in Montgomery, Alabama, to schedule a time and date for the referred welder to take the AWS welding test to gain certification. (*Id.*). The welder must have a construction project number to assign the costs of the test to the project. (*Id.*). If the welder passes the test, the welder is certified to work on ALDOT projects for one year. (*Id.* ¶ 5). The certification can be renewed each year for three years without taking the test again. (*Id.* ¶ 4).

It is undisputed Collier never took the AWS test through ADLOT.[6] That being said, Collier testified that in 2011, he worked as a welder on an ALDOT bridge replacement project in Birmingport, Alabama, under Riley Bridge

---

[5] ALDOT also argues that Collier was not qualified because he did not submit a bid to work on the project. (Doc. 60 at 10, 14-16). But this argument is putting the cart before the horse. Collier testified he was not given the opportunity to submit a bid because ALDOT informed Bell Construction that Collier was not certified to work on ALDOT projects. This statement prevented Collier from having the opportunity to bid on the project.

[6] Collier testified he took and passed the AWS test at American Testing Laboratory, Inc. in Bessemer, Alabama. (Doc. 66-1 at 13). The qualification certificate is part of the record (doc. 66-1 at 13) and seems to meet all the requirements of the test required by ALDOT. (*Compare id.* with Picket Aff. ¶ 4). ALDOT, however, does not accept testing from any facility other than its Materials and Test Bureau in Montgomery.

Company[7] without going through ADLOT's certification process. (Collier Dep. at 77, 80, 92- 95). Collier Welding was not a DBE during that project. Instead, Collier maintains it was only after he presented himself as a DBE that he was required to be separately certified through ALDOT's testing to work on state project. (*Id*. at 121-26).

ALDOT replies to Collier's testimony by arguing that Collier did not provide any evidence,[8] other than his testimony, to support his claim that he worked on the Birmingport bridge project. (Doc. 67 at 7-8). Additionally, ALDOT states it does not have any record that Collier worked as a welder on the Birmingport bridge replacement project as a Riley Bridge employee or as a DBE subcontractor, or any other project in the Birmingham area. (Doc. 67 at 8; Doc. 67-1 ¶ 5). The mere absence of such evidence, however, does not make Collier's testimony somehow incredible for the purposes of summary judgment. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (when considering a motion for summary judgment, "courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [they must] credit the

---

[7] In the discovery process, Collier provided the ALDOT project file number for the Birmingport bridge project.

[8] For example, ALDOT states Collier did not provide pay stubs, invoices or work orders to validate his claim that he worked on the project. (Doc. 67 at 7-8).

nonmoving party's version."); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Instead, it results in a dispute of material fact that must be resolved by a jury.[9] *Anderson*, 477 U.S. at 255 (credibility determinations and the weighing of evidence "are jury functions, not those of a judge").

## IV. CONCLUSION

Because a dispute of material fact exists as to whether Collier was discriminated against on the basis of his race in violation of Title VI, Defendant's motion for summary judgment is **DENIED**.

**DATED** this 18th day of December, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[9] The court does not need to address ALDOT's arguments regarding its Title VI complaint procedures, (doc. 60 at 12-13), because Collier does not argue ADLOT was required to remedy discrimination on the part of Bell Construction. Similarity the court does not address ALDOT's disparate impact analysis, (*id.* at 14-16), as Collier does not argue the DBE policy itself violates Title VI.